**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| Ultra PRO International, LLC, | Case No.:  24-cv-07259 |
| Plaintiff, | |
| v. | Judge: Hon. LaShonda A. Hunt |
| Zentra, LLC, | |
| Defendant. | Magistrate: Hon. Jeffrey Cole |
| | JURY DEMAND |

**FIRST AMENDED COMPLAINT**

Ultra PRO International, LLC ("Plaintiff") hereby files this Complaint for, *inter alia*, trademark infringement, counterfeiting, and related claims against Zentra, LLC ("Defendant"), on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

**THE PARTIES**

1.    Ultra PRO International, LLC ("Plaintiff") is a Delaware limited liability company with its principal place of business located at 6049 Slauson Avenue, Commerce, California 90040.  Plaintiff is a manufacturer, wholesaler, and retail seller of protective card sleeves, binders, and holders for collectible trading cards and game cards.

2.    Upon information and belief, Defendant Zentra, LLC ("Defendant") is a North Carolina limited liability company with its principal place of business located at 110 Associates Lane, Indian Trail, North Carolina 28079.

3.    Defendant conducts infringing activity through fully interactive commercial websites hosted on various e-commerce sites, such as Amazon, eBay, and Wish ("Infringing

Websites" or "Infringing Webstores").  Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and/or infringing products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and the Northern District of Illinois.

4.      Through the operation of its Infringing Webstores, Defendant is directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products.

5.      Defendant has created the Defendant Internet Stores, operate under one or more aliases, and are advertising, offering for sale and selling Unauthorized Products to unsuspecting consumers.

**JURISDICTION AND VENUE**

6.      This is an action for trademark counterfeiting and trademark infringement, and unfair competition and false designation or origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121l.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

8.    This Court has personal jurisdiction over Defendant in that it transacts business in the State of Illinois and in the Northern District of Illinois.

9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendant is subject to personal jurisdiction in this District.  Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant directly target business activities towards consumers in the State of Illinois.

## BACKGROUND FACTS

10.    Plaintiff is engaged in the business of manufacturing, distributing, and retailing products bearing the registered trademark TOPLOADER ("Plaintiff's Products"). Plaintiff's TOPLOADER registration is protected under U.S. Trademark Registration No. 6,976,683 ("Asserted Mark"). The registration is valid, subsisting, unrevoked, and uncancelled.  The registration for the Mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the Mark pursuant to 15 U.S.C. § 1057(b). A true and accurate copy of the registration is attached as Exhibit 1.

11.    Defendant's sales of similar and substandard copies of Plaintiff's Products featuring the Asserted Mark ("Counterfeit Products") are in violation of Plaintiff's intellectual property rights and are irreparably damaging Plaintiff. True and accurate evidence of Defendant's infringing activity is attached as Exhibit 2.

12.    Plaintiff's brand, symbolized by the Asserted Mark, is a recognized trademark for Plaintiff's Products.  As detailed below, Plaintiff has been using the Asserted Mark for many years in connection with the advertising and sale of the Plaintiff's Product in

interstate commerce, including commerce in the State of Illinois and the Northern District of Illinois.

13.    The Asserted Mark has been widely promoted, both in the United States and throughout the world.  The whole of the consuming public associates Asserted Mark with Plaintiff, but also recognize that Plaintiff's Products sold in the United States originates exclusively with Plaintiff.

14.    Plaintiff maintains quality control standards for all of Plaintiff's products, including those sold under the Asserted Mark.  Genuine Asserted products are distributed through Plaintiff and through Plaintiff's authorized licensees.

15.    The Asserted Mark is a highly visible and distinctive worldwide symbol signifying the Plaintiff and Plaintiff's group, and as a result, Plaintiff's Products bearing the Asserted Mark has generated millions of dollars in revenue for Plaintiff over the years. Plaintiff's Mark has become a symbol of excellence, and an expectation of quality uniquely associated with Plaintiff.

16.    The Asserted Mark has never been assigned or licensed to Defendant.

17.    The Asserted Mark is a symbol of Plaintiff's quality, reputation, and goodwill and has never been abandoned.

18.    Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting the Asserted Mark.

19.    Upon information and belief, at all times relevant hereto, Defendant has had full knowledge of Plaintiff's ownership of the Asserted Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

20.     Recently, and for a while in the past, Plaintiff has identified the Asserted Mark on the Infringing Webstores and felt the impact of Counterfeit Products designed to resemble authorized retail Internet stores selling the genuine Asserted Product that Defendant had reproduced, displayed, and distributed without authorization or license from Plaintiff in violation of the Asserted Mark.

21.     Defendant's use of the Asserted Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

22.     Defendant has distributed, offered for sale, and sold Counterfeit Products using the Asserted Mark and continues to do so.

23.     Defendant, without authorization or license from Plaintiff, knowingly and willfully used and continues to use the Asserted Mark in connection with the advertisement, offer for sale, and sale of the Counterfeit Products, through, *inter alia*, the Internet.  The Counterfeit Products are not genuine products sold by Plaintiff under the Asserted Mark. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution.  Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, Defendant has sold Counterfeit Products into the United States, including Illinois.

24.     Defendant falsely advertise the sale of authentic Asserted Product through the Infringing Webstores. Defendant's Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine Asserted Mark Products.

25.     Upon information and belief, Defendant also deceives unknowing consumers by using the Asserted Mark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Asserted Mark Product and in consumer product searches within the Webstores.

26.     Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGMENT
### (15 U.S.C. § 1114)

27.     The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

28.     Plaintiff owns trademark rights in valid U.S. Registration No. 6,976,683 for the mark TOPLOADER.

29.     The Plaintiff's Mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.  The Asserted Mark is highly distinctive and has become universally associated in the public mind with Plaintiff's Product.  Consumers associate the Plaintiff's Mark with the Plaintiff as the source of the very highest quality products.

30.     Defendant sells products through the same channels of trade as Plaintiff.

31.     Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendant's products are sold using a mark identical or confusingly similar to the Plaintiff's TOPLOADER mark, the Defendant has distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or

affecting interstate commerce.

32.   Defendant's use of copies or approximations of the Plaintiff's TOPLOADER mark in

conjunction with Defendant's products is likely to cause and is causing confusion,

mistake and deception among the general purchasing public as to the origin of the

Defendant's products, and is likely to deceive the public into believing the products being

sold by Defendant originate from, are associated with or are otherwise authorized by the

Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

33.   Defendant is using a mark confusingly similar to Plaintiff's TOPLOADER mark that is in

violation of the federal trademark laws including 15 U.S.C. § 1114.

34.   Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined,

the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and

reputation.

35.   Defendant has caused injury to Plaintiff, are likely to continue causing injury to Plaintiff,

and Plaintiff is entitled to injunctive relief, damages, costs, reasonable attorneys' fees,

and any other remedies the Court deems just and proper.

**COUNT TWO**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

36.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

37.   The Counterfeit Products sold and offered for sale by Defendant is of the same nature and

type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,

Defendant's use is likely to cause confusion to the general purchasing public.

38.   By misappropriating and using the Plaintiff's TOPLOADER Mark, Defendant

misrepresents and falsely describes to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

39. Defendant's unlawful, unauthorized, and unlicensed distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

40. Defendant's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's use of the Plaintiff's TOPLOADER mark in connection with its goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

41. The Plaintiff has no adequate remedy at law and, if the Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**COUNT THREE**
**FEDERAL TRADEMARK DILUTION**
**(15 U.S.C. § 1125(c))**

42. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

43. Plaintiff's TOPLOADER mark is an inherently distinctive trademark.

44. Plaintiff has exclusively and exhaustively used the TOPLOADER trademark to promote its products for decades.

45. Plaintiff has generated vast sales over the years under the TOPLOADER mark.

46. Plaintiff has spent large amounts of money over numerous years marketing and advertising its TOPLOADER mark.

47. Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the TOPLOADER mark among the general consuming public of the United States, Plaintiff's TOPLOADER mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

48. Upon information and belief, Plaintiff's TOPLOADER mark became famous before Defendant began using any similar mark.

49. Defendant is diluting and destroying the distinctiveness of Plaintiff's TOPLOADER mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

50. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's TOPLOADER mark.

51. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

52. As a result of Defendant's conduct and actions, Plaintiff's TOPLOADER trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause,

irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive TOPLOADER trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT FOUR**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES**
**(815 ILCS 510)**

53.  The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

54.  The Counterfeit Products sold and offered for sale by Defendant is of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use is likely to cause confusion to the general purchasing public.

55.  By misappropriating and using the Plaintiff's TOPLOADER mark Defendant misrepresents and falsely describes to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

56.  Defendant's unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to the Defendant's profit and to the Plaintiff's great damage and injury.

57.  Defendant's aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 et seq., in that Defendant's use of the Plaintiff's TOPLOADER mark in connection with its goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

58.  Plaintiff has no adequate remedy at law and, if the Defendant's activities are not

enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against Defendant in favor of the Plaintiff on all counts as follows:

1.     That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

(i)     using the Plaintiff's Mark or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's Mark in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of the Plaintiff; and

(ii)     passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

(iii)     committing any acts calculated to cause consumers to believe that Defendant's Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv)     further infringing the Plaintiff's Mark and damaging Plaintiff's goodwill;

(v)     competing unfairly with Plaintiff in any manner;

(vi)     shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or

offered for sale, and that bear the Asserted Mark or any reproductions, counterfeit copies, or colorable imitations thereof;

(vii)    using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendant could continue to sell Counterfeit Products;

(viii)    operating and/or hosting websites at the Infringing Webstores and any other domain names registered or operated by Defendant that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's Mark or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Mark;

(ix)    registering any additional domain names that use or incorporate any of the Plaintiff's Mark; and,

(x)    possessing any product bearing the Plaintiff's Mark or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Mark. As part of compliance with this provision, we ask that Defendant or those who possess Defendant's infringing goods, segregate and destroy infringing goods.

2.    That Defendant, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendant has complied with any and all injunctive relief ordered by this Court.

3.      Entry of an order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any Internet search engines, Webstore hosts or its administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendant engage in the sale of Counterfeit Products using the Plaintiff's Mark;

4.      That Defendant account for and pay over to Plaintiff any and all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the Asserted Mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

5.      In the alternative, that Plaintiff be awarded statutory damages of One Hundred Thousand United States Dollars and No Cents ($100,000.00) for each and every use of the Plaintiff's Mark counterfeited by Defendant.

6.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7.      Grant Plaintiff such other and further legal relief as may be just and proper.


Respectfully Submitted,

 Dated: September 3, 2024                          By: _____ /s/ Kevin Keener _____

                                                    Kevin J. Keener
                                                    ARDC # 6296898
                                                    Keener & Associates, P.C.
                                                    161 N. Clark Street, Suite #1600
                                                    Chicago, IL 60601
                                                    (312) 375-1573
                                                    kevin.keener@keenerlegal.com